FILED
2026 Sep-30 PM 05:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| DEBRA L. TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00690-SGC |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Debra L. Terry appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income. (Doc. 1).[2] Terry exhausted her administrative remedies, and the Commissioner's decision is ripe for review. For the reasons discussed below, the Commissioner's decision will be remanded for further consideration.

## I. STATUTORY AND REGULATORY FRAMEWORK

To establish eligibility for disability benefits, a claimant must show "the

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record (Doc. 9) refer to the page numbers assigned by the Commissioner and appear in the following format: (R. __).

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the claimant's impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled, and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. § 404.1520(a) and (b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

## II. THE ALJ'S DECISION[3]

Terry applied for benefits in November 2020, claiming she became disabled on November 9, 2020, when she was 38 years old. (R. 286-91, 298, 1813). Terry alleged disability due to degenerative disc disease ("DDD"), scoliosis, diabetes, psoriasis, high blood pressure, arthritis, vitamin D deficiency, and thyroid problems. (R. 306). After the application was denied, Terry had a hearing before an administrative law judge ("ALJ"), who issued a decision on March 21, 2022, finding she was not disabled. (R. 22-49, 185-97). The Appeals Council denied review, and Terry filed an appeal in this district. (*See* R. 1882-83). On the Commissioner's unopposed motion, the district court remanded the case to the Commissioner for further proceedings under Sentence Four of 42 U.S.C. § 405(g). (*Id.*); *see Terry v.*

[3] Due to Terry's numerous ailments and the prior appeal remanded from this district to the Commissioner, the administrative record in this matter consists of more than 2,800 pages. (Doc. 9). However, this appeal is limited to the ALJ's consideration of medical opinions and Terry's back problems, particularly scoliosis. (Doc. 16 at 3).

*Comm'r*, No. 22-1620-JHE (N.D. Ala. *remanded* June 20, 2023).

On remand, the same ALJ held a second hearing on February 1, 2024. (R. 1836-65). During the telephonic hearing, Terry testified she suffered from a number of ailments, including a torn rotator cuff, severe back pain, wrist problems, psoriatic arthritis, diabetes, plantar fasciitis, tibial tendonitis, irritable bowel syndrome ("IBS"), anxiety, and depression. (R. 1843-53). Terry testified the ailment that most affected her functional abilities was back pain, which limited the amount of walking she could do and prevented her from standing or sitting upright in a chair for more than five minutes at a time. (R. 1845-47). Terry stated she could not lift 10 pounds and that, on a normal day between the hours of 8:00 a.m. and 5:00 p.m., she would spend approximately five hours lying down and switching positions to alleviate her back pain. (R. 1847-48).

Following the hearing, the ALJ issued a second unfavorable decision on May 9, 2024, again concluding Terry was not disabled. (R. 1813-25). The ALJ first found Terry had not engaged in substantial gainful activity since the alleged onset date of November 9, 2020. (R. 1815). At the second step, the ALJ determined Terry had the severe impairments of DDD post-2019 back surgery, an incomplete tear of her right rotator cuff status post repair, psoriatic arthritis, obesity, osteoarthritis of the left hip, major depressive disorder, and generalized anxiety disorder. (*Id.*). In addition to these severe impairments, the ALJ noted the record supported—or Terry

alleged—diagnoses of hypertension, gastroesophageal reflux disease, diabetes, mixed IBS, bilateral carpal tunnel syndrome, plantar fasciitis, Marfan syndrome, and hidradenitis suppurativa. (R. 1816). The ALJ concluded these additional impairments were non-severe because they did not significantly limit Terry's ability to perform work-related activities. (R. 1816-17).

At the third step, the ALJ determined Terry's medically determinable impairments did not meet or medically equal the severity of any of the Listings. (R. 1817). Before proceeding to the fourth step, the ALJ found Terry's impairments could reasonably be expected to cause some of her alleged symptoms and functional limitations but that her statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 1819). The ALJ determined Terry had the RFC for light work with the following limitations:

> [She] can occasionally operate foot controls with the left lower extremity and can occasionally climb ramps and stairs, stoop, kneel, and crouch. The claimant should never climb ladders, ropes, or scaffold[s] nor should she crawl. The claimant can occasionally reach overhead with the right upper extremity. The claimant can have occasional exposure to extremes of cold and to full body vibration. The claimant should have no exposure to hazards such as unprotected heights and hazardous machinery. The claimant would be able to understand, remember, and carry out simple instructions and tasks. The claimant can tolerate changes in the workplace that are infrequent and gradually introduced. The claimant can have only occasional work-related interactions with the general public.

(R. 1818-19).

In determining Terry's RFC, the ALJ generally found the medical record did not support the functional limitations she reported. (R. 1819). The ALJ assessed Terry's back problems—one focus of the instant appeal—as follows:

> The claimant is status post lumbar spine L3-5 hemilaminectomy with left L4-5 microdiscectomy done in March 2019. She continued to complain of low back pain following surgery and magnetic resonance imaging (MRI) of the lumbar spine done in August 2020 showed lumbar scoliosis with spinal stenosis and foraminal narrowing, most significant at L3 and L4, and impingement upon the exiting left L4 nerve root. She underwent transforaminal epidural injections in September and October 2020 and in January 2021. At a follow up in February 2021, the claimant reported little relief and reported she was interested in a weight loss clinic and [referral] to a pain management clinic. The claimant did not follow up immediately but was seen again reporting pain in the low back and had a noted antalgic gait and limited range of motion due to pain. The claimant requested referral to an orthopedist at that time. The claimant was seen by an orthopedist in June 2023, where [s]he had 5/5 strength and a mildly positive straight leg raise test on the right, and was referred to physical therapy and recommended to lose weight. The claimant had another MRI in August 2023 that revealed the remote left hemilaminectomy findings at L4 and L5 levels with moderate left neural foraminal stenosis at L4-5 and mild bilateral neural foraminal stenosis at L3-4. Her physician opined that surgery was not a reasonable option at this time and recommended epidural injections and pain management services. The claimant underwent a L4-5 and L5-S1 epidural injection in January 2024 and was noted at the time to be able to heel walk, toe walk, and had normal muscle tone and strength.

(R. 1820) (citations omitted).

After addressing Terry's other severe impairments, the ALJ discussed numerous medical opinions in the record, including opinions offered by treating sources, a consultative examiner, and non-examining sources. (R. 1822-23). In general terms, the ALJ rejected the opinions from Terry's treating nurse practitioner

(Ivonne Joiner, CRNP) and examining sources (Jane Teschner, M.D. and June Nicols, Psy. D.) which ascribed greater limitations than those reflected in the RFC. Instead, the ALJ largely accepted the 2021 opinions of two state agency medical consultants, Victoria Hogan, M.D., and Krishna Reddy, M.D, who reviewed Terry's medical records and opined she could perform a limited range of light work. Included in Dr. Hogan's and Dr. Reddy's opinions is the conclusion that, during an eight-hour workday, Terry could spend six hours standing and/or walking, and six hours sitting. (R. 168, 177). The ALJ was "generally persuaded" by these opinions, although her RFC ultimately imposed greater limitations on the frequency with which Terry could climb ramps and stairs, balance, stoop, and crawl. (R. 1823).

At the fourth step, the ALJ determined Terry had no past relevant work. (R. 1823). Proceeding to the final step, the ALJ found Terry was a younger individual on the alleged disability onset date. (R. 1824). Terry had a high school education, and transferable skills were not an issue due to the absence of past relevant work. (*Id.*). Finally, the ALJ found there were a significant number of jobs in the national economy Terry could perform, including marker and routing clerk. (*Id.*). Accordingly, the ALJ concluded Terry was not disabled. (R. 1825). This became the Commissioner's final decision when the Appeals Council denied review. *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). The instant appeal followed. (Doc. 1).

## III. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is narrow. The review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV. DISCUSSION

As previously mentioned, a primary focus of Terry's appeal is the ALJ's treatment of opinion evidence in making the RFC determination, particularly the conclusion she could stand and walk for up to six hours out of an eight-hour

workday. (*See* Doc. 21 at 1-2).[4] Relatedly, Terry also contends the ALJ did not properly address her scoliosis. Because this matter will be decided on the basis of the following opinion evidence, the court declines to address Terry's remaining arguments. On remand, the Commissioner may find it necessary to consider the other issues raised in the instant appeal.

The SSA's 2017 regulations regarding evaluation of medical opinions govern here. For claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings. *Id.* The most important factors are supportability and consistency. *Bradford v. Soc. Sec. Admin.*, No. 21-129-LSC, 2022 WL 3036608, at *4 (N.D. Ala. Aug. 1, 2022) ("While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the

[4] While the ALJ's RFC allowed for a limited range of light work, it placed no limitation on Terry's ability to stand and walk. *See* SSR 83-10 (light work RFC includes the ability to stand and walk for six hours during an eight-hour workday).

other factors.") (footnote omitted).

As the regulations explain, the "supportability" factor focuses on the medical opinion at issue and the sources on which it relies. 20 C.F.R. § 404.1520c(c)1. ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Meanwhile "consistency" focuses on the record as a whole and how it compares with the opinion at issue. *Id.* ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

### A. <u>**Joiner Opinion**</u>

Nurse Joiner[5] began treating Terry at CarePlus in Rainbow City in 2018. (*See* R. 1822). On December 16, 2021, Nurse Joiner completed a questionnaire form regarding her opinion of Terry's functional limitations. (R. 1307). On the form, Joiner circled answers indicating Terry could sit upright in a chair for less than 30 minutes at a time, could stand for less than 15 minutes at a time, and would spend six hours of an eight-hour workday lying down, sleeping, or sitting with her legs

[5]It appears Nurse Joiner changed her last name from Rivera while treating Terry. (*See* R. 567-74).

propped up. (*Id.*). In response to other questions on the form, Joiner estimated Terry would be off-task for 75% of a normal workday and would miss 20 out of 30 workdays due to DDD, psoriatic arthritis, scoliosis, anxiety, and depression. (*Id.*). Joiner also reported that Terry suffered from a depressed immune system and drowsiness due to medications she was prescribed. (*Id.*).

The ALJ found Nurse Joiner's opinion "unpersuasive," concluding it was "not supported by treatment records or consistent with other evidence in the file." (R. 1822). Regarding Joiner's conclusion that Terry could stand for less than 15 minutes at a time, the ALJ pointed to an instance in the record when Terry indicated she could walk for up to an hour. (*Id.*). Regarding Joiner's opinion that Terry would be off task 75% of the time, the ALJ noted Terry cared for her mother, her teenage children, and her grandchild. (*Id.*). Regarding Joiner's conclusion that Terry would miss 20 out of 30 work days, the ALJ stated the record revealed "few, if any" no-show medical appointments. (*Id.*). The ALJ also discounted Joiner's opinion because it was expressed on a fill-in-the-blank form, providing "little to no narrative to support these conclusions." (*Id.*).

While the ALJ cited a lack of both supportability and consistency, the decision does not specifically analyze the supportability of Joiner's opinion beyond critiquing it as lacking a sufficient narrative and appearing on a fill-in-the-blank form. However, the fact that Joiner's opinion appeared on a questionnaire form does not

provide a basis on which to discount it. *Schink v. Comm'r*, 935 F.3d 1245, 1262 (11th Cir. 2019). Further, Joiner's opinion is not limited to the questionnaire; it is informed by the notes detailing her treatment of Terry, including the appointment held on the same day she issued the opinion. (R. 1770-74). That day, Joiner noted Terry's extensive history of back pain and chronic pain, her diagnosis with scoliosis at a young age which required her to wear a back brace, and her DDD. (R. 1770). Joiner's physical examination revealed tenderness with palpation over the thoracic and lumbar regions. (R. 1773). The ALJ erred in not considering Joiner's treatment notes that supported her opinion. *Schink*, 935 F.3d at 1262 (remanding to Commissioner where ALJ failed to consider medical opinions on questionnaire form in light of accompanying treatment notes).[6]

Regarding consistency, the ALJ found fault with Joiner's opinion due to Terry's reports that she walked for more than an hour and cared for family members, as well as the fact she had few no-show appointments. These rationales are addressed in turn. Regarding Terry's ability to walk, the ALJ cited an exhibit consisting of over 400 pages of records from Quality of Life Health Services in

---

[6] While not clear from her decision, the ALJ may have concluded none of the records from CarePlus supported Joiner's opinion. To the extent that was the ALJ's conclusion, it is not supported by substantial evidence. Records from CarePlus and Nurse Joiner show Terry suffered from back pain and lower back problems. These records include X-rays of the lumbar spine taken in August 2020 revealing lumbar spondylosis and imaging showing "[l]umbar scoliosis with spinal canal stenosis and foraminal narrowing most significant at L3 and L4 [and] impingement upon the exiting left L4 nerve root." (R. 537, 573).

Gadsden, reflecting her treatment there from 2014 to 2022. (R. 1822) (citing R. 1359-1765). Among those records is a note from a social worker memorializing a September 2, 2021 telephone appointment with Terry. (R. 1567-68). By that day, Terry's pain had returned but, during the appointment, she spoke of a prior, unspecified period when her pain had been less severe. (*Id.*). During the earlier time when her symptoms were improved, Terry reported she had been more active and that she "walked at the park for over an hour until [her] back started hurting." (R. 1568). The fact that Terry reported her ability to walk had temporarily improved at some point prior to September 2021—by which time her pain had returned—is not inconsistent with Joiner's December 2021 opinion that pain limited her ability to stand for more than 15 minutes at a time. Even Terry's own report, upon which the ALJ relied, noted pain forced her to quit walking after an hour. Moreover, a treatment note generated during an August 12, 2021 appointment at Quality of Life acknowledges Terry's pain was aggravated by walking and standing. (R. 1570). For the foregoing reasons, Terry's self-reported ability to walk is not inconsistent with Joiner's opinion that she was limited to standing for 15-minute intervals.

Next, the ALJ cited the fact that Terry had "few, if any" no-show appointments to discount Joiner's opinion that she would have excessive absences from work. As Terry notes, the implication that she may not have missed any appointments is strange given that, two pages earlier in the decision, the ALJ

recounted she had "several 'no show' visits" to physical therapy in 2022. (R. 1820; *see* Doc. 16 at 36). Additionally, the record shows other no-show appointments not mentioned by the ALJ. Following rotator cuff surgery, Terry was discharged from physical therapy on March 31, 2023, for failure to attend appointments. (R. 2687).[7] Elsewhere, records list Terry's inability to keep appointments as a barrier to treatment. (R. 2702). Terry was also discharged from a subsequent round of physical therapy on September 8, 2023, after missing four appointments, including two no-shows. (R. 2734). For the foregoing reasons, substantial evidence does not support the ALJ's reliance on Terry's attendance at medical appointments as inconsistent with Joiner's opinion she would have excessive absences from work.

Finally, the ALJ found Terry's status as a caretaker for her mother, children, and grandchild was inconsistent with Joiner's opinion that she would be off-task 75% of the time. (R. 1822). Terry testified at the hearing that she lived with her mother, along with her 18-year-old son and three-year-old granddaughter. (1856-57). Terry also testified her mother is not able-bodied and has balance problems and that she assists her with certain tasks, including getting into the shower and taking her to medical appointments. (R. 1857). Other than these two discrete tasks, the hearing testimony does not reveal the amount or type of care Terry provided for the

[7] The no-show appointments discussed in the ALJ's decision occurred in 2022. The additional no-show appointments occurred in later courses of physical therapy which the ALJ did not discuss.

members of her household. However, Terry further explained that her mother helped her with other activities of daily living, such as cooking, and that Terry could perform household chores for approximately five minutes before needing to rest for five to ten minutes due to pain. (R. 1852-53, 1858).

The ALJ recounted some of this hearing testimony, but the only evidence she cited as inconsistent with Joiner's opinion that Terry would be off-task 75% of the time was the same 400-plus page exhibit of medical records from Quality of Life Health Services spanning eight years of treatment. The undersigned's review of these records, many of which are difficult to read, has not revealed any statements regarding the type and amount of care she provided.[8] Other medical records not cited by the ALJ reflect Terry had difficulty caring for her grandchildren and performing activities of daily living. For example, treatment notes associated with physical therapy in March 2023 show she was having difficulty carrying her grandchildren, grooming, dressing, driving, and cleaning. (R. 2689). Physical therapy notes from June 2023 reflect Terry's "significant, debilitating back pain" was interfering with all activities of daily living. (R. 2702). The foregoing discrepancies do not constitute mere disagreements with how the ALJ weighed conflicting evidence. Indeed, the ALJ has cited no evidence specifically indicating how Terry's unknown caretaking duties would be inconsistent with Joiner's opinion

[8] The Commissioner's brief does not point to any evidence on this question.

that she would be off task for the majority of a typical workday.

For all of the foregoing reasons, the ALJ's dismissal of Joiner's opinion is not supported by substantial evidence.

### B. Teschner Opinion

Dr. Teschner completed a consultative examination on January 3, 2022. After reviewing Terry's "voluminous" medical records, Dr. Teschner conducted a physical examination revealing, among other findings: (1) positive straight leg test on the left at 30 degrees; (2) observable scoliosis in the thoracic lumbar area on the left; (3) weakness in her left leg; and (4) decreased range of motion in her cervical spine. (R. 1768). Dr. Teschner noted multiple "major" problems, including: (1) chronic back pain; (2) radiculopathy due to spinal stenosis; (3) foraminal stenosis more notable on the left and particularly in the lumbar area, despite surgery; (4) numbness and tingling in her legs resulting in multiple falls; and (5) peripheral neuropathy. (*Id.*). Dr. Teschner also noted Terry's back problems had worsened post-surgery, including signs of myelopathy, suggesting a progression of spinal stenosis. Based on these findings, Dr. Teschner opined Terry: (1) could not lift over five pounds; (2) could never reach, handle, finger, or feel with her hands; (3) would be off task during 90% of an eight-hour work day; (4) would be absent 90% of the month; (5) could not stand or sit upright in a chair; and (6) required a cane to walk. (R. 1768).

The ALJ found Dr. Teschner's opinion was unpersuasive because it was not supported by her findings during the consultative examination and was inconsistent with other evidence. (R. 1822). Regarding supportability, the ALJ did not explain how Dr. Teschner's opinion was inconsistent with the findings from her physical exam. Given Dr. Teschner's observations described above, the ALJ's conclusion in this regard is not backed by substantial evidence. Regarding consistency, the ALJ again generally cited Terry's role as a caretaker but also took particular issue with Dr. Teschner's conclusion that she required a cane to walk.[9] The ALJ's reliance on Terry's status as a caretaker suffers from the same deficiencies noted above regarding Joiner's opinion. The ALJ was correct that Dr. Teschner was the only medical provider to recommend a cane, and Terry concedes this limitation is inconsistent with the record as a whole. (Doc. 16 at 32). However, the ALJ did not explain how the other significant limitations imposed by Dr. Teschner's opinion are inconsistent with the medical record.

For the foregoing reasons, the ALJ's dismissal of Dr. Teschner's opinion is not supported by substantial evidence.

### C. <u>Nichols Opinion</u>

[9] The ALJ accurately reported that Terry fell in March 2021 while helping to carry a television down a set of stairs. (R. 1822) (*citing* R. 882). While participating in this activity might call into question other limitations imposed by Dr. Teschner, it is worth noting that Terry was unable to accomplish the task and that attempting it resulted in a fall. In any event, the ALJ cited the fall only to show that Terry did not require a cane to ambulate, not that she had greater functional abilities across other domains.

On May 19, 2022, Dr. Nichols examined Terry, conducted a psychological evaluation, and issued an opinion regarding her mental health limitations. (R. 2373-82). After summarizing her extensive medical history and treatments, Dr. Nichols opined:

> Ms. Terry can understand, remember and carry out very short and simple instructions. She cannot maintain attention, concentration and/or pace for periods of at least two hours. She cannot perform activities within a schedule and be punctual within customary tolerances. She can sustain an ordinary routine without special supervision. She cannot adjust to routine and infrequent work changes. She can interact with supervisors and or co-workers. She can maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. In addition to normal workday breaks, she would likely be off task 60% of an 8 hour day. In a 30-day period, she would likely fail to report to work 15 days due to psychological symptoms. Her limitations existed back to 11/9/20.

(R. 2380).

The ALJ found this opinion to be minimally persuasive because: (1) it was based on a one-time examination; (2) it was "not wholly consistent" with Terry's reports during psychological treatment; (3) Terry did not have a history of excessive missed appointments; (4) Terry was a caretaker for her family members; (5) Dr. Nichols's examination was not related to an attempt to seek treatment but was arranged through an attorney to provide evidence for her disability case; and (6) Dr. Nichols was likely paid for the report. (R. 1823).

As already discussed, Terry's role as a caretaker and the fact that she did not miss an excessive number of appointments do not provide a proper basis to discount

a medical opinion under the circumstances of this case. Next, the ALJ's decision is internally inconsistent to the extent it discounts Dr. Nichols's opinion because she was compensated to generate it, it was based on a one-time examination, and was not part of an attempt to seek treatment. As Terry notes, consistent application of the foregoing rationales would have led to the rejection of the state agency consultants' opinions. Specifically: (1) the opinions were generated without examining Terry and were entirely based on a review of her medical records; (2) the opinions were not connected with any attempt to treat Terry; and (3) the state agency consultants were almost certainly paid to conduct the reviews and generate the opinions. Yet the ALJ largely accepted the state agency consultants' opinions without discussing that they arose in circumstances which supposedly rendered Nichols's opinion deficient. This internal inconsistency undermines the ALJ's decision to discount Nichols's opinion. *See Schink*, 935 F.3d at 1260-61 (ALJ erred in rejecting medical opinion due to source's sporadic treatment of plaintiff, while accepting opinion from another source with equally sporadic treatment record).[10] Accordingly, the ALJ failed to assess the supportability of Dr. Nichols's opinion.

Regarding consistency, the ALJ stated simply, without explanation, that Dr. Nichols's opinion was not wholly consistent with reports from Terry's mental health

[10] While *Schink* arose in the context of the now-abandoned treating physician rule, it stands more generally for the proposition that good sauce for the goose is good sauce for the gander.

provider. (R. 1823). Earlier, the ALJ briefly summarized the treatment notes from Carr Mental Wellness as showing Terry reported in December 2022 that she was "doing okay overall." (R. 1821). However, other records from this provider show Terry was experiencing increasing and "unmanageable" anxiety, as well as worsening mood swings. (R. 2471, 2474, 2507, 2510). Accordingly, the ALJ failed to properly assess the consistency of Dr. Nichols's opinion.

For the foregoing reason, the ALJ's decision to discount the opinion of Dr. Nichols is not supported by substantial evidence.

## V. CONCLUSION

For all of the foregoing reasons, the ALJ's decision to reject the opinions from Nurse Joiner, Dr. Teschner, and Dr. Nichols was not supported by substantial evidence or in accord with applicable law. Accordingly, Terry is due the relief she seeks here: remand to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). *See Bradford*, 2022 WL 3036608, at *4; (Doc. 16 at 39; Doc. 21 at 19). On remand, the Commissioner may find it necessary to further address the evidence or provide additional analysis on the basis of the arguments Terry presented in the instant appeal.

A separate order will be entered.

**DONE** this 30th day of September, 2026.

Staci G. Cornelius

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE